## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

In re                    )   **CHAPTER 11**

**BERKLEY MANOR APARTMENTS L.P.,**   )   **CASE NO. 09-41895**

          Debtor.            )

### STIPULATION AND FINAL ORDER PURSUANT TO
### 11 U.S.C. §§ 361, 363 AND 364 (I) AUTHORIZING USE OF
### CASH COLLATERAL, AND (II) GRANTING ADEQUATE PROTECTION

This matter comes before this Court on the Debtor's motion (the "Motion") seeking the entry of an order (a) authorizing, pursuant to Section 363(c) of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), use of cash and cash equivalents constituting "Cash Collateral" (as that term is defined in Section 363(a) of the Bankruptcy Code) in the ordinary course of business and pursuant to the Budget (as defined herein); (b) providing, pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, adequate protection to Anglo Irish Bank Corporation Limited, f/k/a Anglo Irish Bank Corporation PLC ("Lender"), as senior secured creditor, with respect to any diminution in the value of the Lender's interest in the Collateral (as that term is defined below) for the use of all Cash Collateral and the use, sale or lease of the Collateral (other than the Cash Collateral) and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code; the Final Hearing having been held before this Court; due and sufficient notice of the Motion and the Final Hearing under the circumstances having been given; and upon the entire record made at the Final Hearing, and this Court having found good and sufficient cause appearing therefore

THE DEBTOR AND THE LENDER STIPULATE ~~AND THIS COURT FINDS AND~~  ) *psh*

~~CONCLUDES THAT.~~ ——

A.    On November 4, 2009 (the "Petition Date"), the Debtor filed its voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is continuing in possession of its property and operating and managing its business as a Debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.    Without prejudice to the rights of any other party, the Debtor acknowledges and stipulates that from time to time prior to the Petition Date the Lender loaned money to or for the benefit of the Debtor, pursuant to the terms and conditions of that certain Loan Agreement and that certain Promissory Note, each dated March 20, 2007, as amended, modified, supplemented or restated from time to time (collectively, the "Loan Agreement"), and as further documented, recorded and evidenced by various other agreements, instruments, financing statements and documents entered into in connection with the Loan Agreement, all as may have been amended, modified or restated from time to time (collectively, the "Prepetition Loan Agreements").[1]

C.    Without prejudice to the rights of any other party, the Debtor acknowledges and stipulates that, in accordance with the terms of the Prepetition Loan Agreements, the Debtor is truly and justly indebted to the Lender, without defense, counterclaim or offset of any kind, and that, as of the Petition Date, (i) the Debtor was liable to the Lender in respect of loans made by the Lender to the Debtor pursuant to the Prepetition Loan Agreements in the aggregate principal amount of $30,649,504.50 (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities)(the "Prepetition Loan Obligations"), and (ii) pursuant to the Prepetition Loan Agreements, the Debtor was liable to the Lender for accrued and unpaid interest, attorneys' fees, other out-of-pocket expenses, costs and indemnities.

---

[1] Capitalized terms not otherwise defined herein shall have the definitions set forth in the Prepetition Loan Agreements.

D.      Without prejudice to the rights of any other party, the Debtor acknowledges and stipulates that under the terms of the Prepetition Loan Agreements and as security for repayment of the Prepetition Indebtedness, the Debtor granted to the Lender security interests in, and liens upon substantially all of the Debtor's assets, both tangible and intangible, as more fully described in the Prepetition Loan Agreements, which are incorporated herein by reference (collectively, including the Cash Collateral existing as of the Petition Date, the "Prepetition Collateral").

E.      Without prejudice to the rights of any other party, the Debtor acknowledges and stipulates that the Lender's security interests in and liens on the Prepetition Collateral were properly perfected and are valid and enforceable first priority liens on and security interests in the Prepetition Collateral.  The Debtor further acknowledges and stipulates that all of the Debtor's cash on the Petition Date constitutes proceeds of the Prepetition Collateral and, therefore, constitutes Cash Collateral.  The Lender is entitled, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral, including for the use of the Cash Collateral, the use, sale or lease of the Prepetition Collateral other than the Cash Collateral and the imposition of the automatic stay under Section 362 of the Bankruptcy Code.

F.      Notice of the Final Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the Lender, (iii) the creditors holding the 20 largest claims against the Debtor, and (v) all parties requesting notice in this case.  .

G.      A need exists for the Debtor to use Cash Collateral to continue to operate its business and the Debtor has requested authority to do so as specified in the Budget (as defined below) in order to, inter alia, pay wages, generally conduct its business affairs, subject to and within the limits imposed by the mutually agreed upon Budget (as defined below) and further subject to the terms and conditions of this Final Order.

H.    The Lender have consented to the Debtor's use of Cash Collateral conditioned upon the express terms and conditions set forth in this Final Order.

## ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND, AS APPLICABLE, STIPULATED THAT, EFFECTIVE IMMEDIATELY:

1.    The Motion is granted, pursuant to the terms and conditions set forth in this Final Order and any objections thereto that have not previously been withdrawn are overruled. This Final Order is valid immediately and fully effective upon its entry.

2.    This Court has jurisdiction over these Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3.    Subject to the terms and conditions of this Final Order, the Debtor may use Cash Collateral and shall pay its ordinary and necessary business expenses for the period from December 17, 2009 through and including March 6, 2009, pursuant to the budget attached hereto and incorporated herein as Exhibit A (the "Budget"), which has been consented to by the Lender. The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis, and the Debtor warrant and represent that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in the ordinary course of business in connection with the operation of its business for the period set forth in the Budget. In no event shall the Debtor use any Cash Collateral to pay any items except as set forth in the Budget, or as approved by the Bankruptcy Court after notice to the Lender and a hearing, or as may be consented to in writing by the Lender. The Debtor further agree not to incur any administrative expenses other than set forth in the Budget or the following month's Budget without the prior written consent of the Lender or approval by the Bankruptcy Court after notice to the Lender and

a hearing and the Debtor hereby waive any right to surcharge the Collateral (as defined below) under Section 506(c) of the Bankruptcy Code. Not later than the second (2nd) business day of each week, the Debtor shall provide to the Lender a variance report reflecting, on a line-item basis, the actual cash receipts and disbursements for such week, the dollar variance and the percentage variance (the "Variance Percent") of such actual receipts and disbursements from those reflected in the Budget for that week. Any disbursement by the Debtor other than for such expenses set forth in the Budget within the Variance Percent shall constitute an Event of Default under this Final Order unless the Lender consents to such disbursements in writing; provided, however, that the Debtor may make payments in excess of the total budgeted disbursements so long as (i) the Variance Percent of the aggregate of all actual disbursements for each week shall not exceed ten (10%) percent of the budgeted disbursements for that week and shall at no time exceed the actual cash receipts of the Debtor for the month during which the Budget week falls; and (ii) the Variance Percent of the aggregate of all actual disbursements for any consecutive four-week period shall not exceed ten (10%) percent of the aggregate of all budgeted disbursements for such four-week period (subsections (i) and (ii) above are collectively, the "Allowed Variance"). The Adequate Protection Payments, as provided in the Budget, shall be paid to Lender in full (with no variance) on the weeks that they are budgeted to the extent that funds are available. At the end of each month, the Debtor shall disburse to Lender all Cash Collateral in excess of the amounts set forth in the Budget (but allowing for a minimum working capital balance for the proceeding four weeks of not less than $5,000) to be applied first, to fund any unpaid Adequate Protection Payments for the current month or any preceding months, and second to be held in escrow and applied toward the payment of currently outstanding real estate taxes on the Collateral.

4.      Immediately upon entry of this Final Order, the Debtor shall account to the Lender for all cash, checks, notes, drafts, instruments, acceptances and other property representing cash or other proceeds of the Prepetition Collateral in the Debtor's possession or control.  All cash, checks, notes, drafts, instruments, acceptances and other property and interests in property of the Debtor (the "Cash Proceeds") currently in the possession of the Debtor or in any accounts in financial institutions, depository accounts, shall be deemed proceeds of the Prepetition Collateral.  All Cash Proceeds shall be remitted to the Lender in accordance with the terms of this Final Order.

5.      The Debtor are hereby required to deliver to the Lender such other financial and other information concerning the business and affairs of the Debtor as the Lender shall reasonably request from time to time, including, without limitation, the financial reports and information provided to the Lender under the Prepetition Loan Agreements.  The Debtor will permit the Lender, the Lender's agents and any consultants engaged by the Lender full access to examine the respective corporate, financial and operating records, and, at the Debtor's expense, make copies thereof, inspect the assets, properties, operations and affairs of the Debtor, visit any or all of the offices of the Debtor to discuss such matters with its officers, independent auditors (and the Debtor hereby authorize such independent auditors to discuss such matters with the Lender, its agents and consultants), and the Debtor will cooperate with the Lender, its agents and consultants in all respects.  All of the foregoing activities shall be conducted during normal business hours, and in such a manner as to create the least disruption of Debtor's operations as is reasonably possible.

6.      The Debtor shall further provide the Lender with (a) detailed information as to the extent and composition of the Collateral (as defined below) and any collections thereon; (b) a weekly report, with information reasonably satisfactory to the Lender, identifying and

differentiating accounts receivable and billings; (c) a weekly revenue report; and (d) a weekly report of actual expenditures versus Budget expenditures.

7.    The Debtor's right to use Cash Collateral shall expire on the earlier of (a) the close of business on March 6, 2010, or (b) the occurrence of any event described in paragraph 23 of this Final Order (the "Expiration Date").  In no event shall the Debtor be authorized to use Cash Collateral except strictly in compliance with the terms and conditions of this Final Order and the Budget.

8.    In providing for the use of Cash Collateral, the Debtor and the Lender stipulate and agree that:

(a)    the Lender has no obligation to provide ongoing financing to the Debtor under the Prepetition Loan Agreements; provided, however, that the Lender reserves its rights to pursue any rights and remedies set forth thereunder against the Debtor;

(b)    consistent with 11 U.S.C. § 506(b), the Lender may continue to charge to the account of the Debtor and to pay in accordance with the Prepetition Loan Agreements all fees, expenses and other costs owing as of the Petition Date and which may arise in the normal course of the Debtor's business during the Chapter 11 Case with the Replacement Liens (as defined below) to secure such fees, expenses and other costs;

(c)    the Debtor are not aware of and hereby waive any claim, counterclaim, setoff or defense of any kind or nature which would in any way (i) affect the validity, enforceability and non-avoidability of the Prepetition Loan Obligations, the Prepetition Loan Agreements, or any of the liens and security interests held by the Lender under the Prepetition Loan

Agreements (collectively, the "<u>Prepetition Liens</u>"), or (ii) reduce or affect the obligations of the Debtor, the Guarantor to pay any of the Prepetition Loan Obligations; and

(d)     without prejudice to the rights of any other party, the Debtor stipulate (i) that the Prepetition Liens are valid, perfected and unavoidable, (ii) that the Lender as of the Petition Date have an allowed secured claim in the amount of the Prepetition Loan Obligations, and (iii) that the Lender and all of its agents, accountants, officers, attorneys, directors, employees and agents shall be and are hereby released from all claims and causes of actions, whether known or unknown, contingent or fixed, liquidated or unliquidated, which claims and causes of actions arose prior to the Petition Date.

9.     The Lender's obligations under this Final Order are conditioned upon and subject to the delivery to the Lender of within seven (7) days after the entry of this Final Order, evidence satisfactory to the Lender that the Collateral (as defined below) is insured for the full replacement value thereof and the Lender is named as loss payee and/or as additional insured on all insurance policies.

10.     The Lender is not required to advance to the Debtor any amounts that may be available for lending under the Prepetition Loan Agreements with the Debtor.

11.     The Debtor are authorized to provide adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to Lender pursuant to the terms and conditions of this Final Order, including, without limitation, the Adequate Protection Payments listed in the Budget.

12.    The Lender is hereby granted, as adequate protection for any diminution in the value of the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, a valid, perfected and enforceable first-priority security interest (the "Replacement Liens") in and upon the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, and all other real and personal property of the Debtor of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all accounts, inventory, instruments, investment property, documents, equipment, fixtures, general intangibles, and any and all proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing, and the proceeds of any causes of action and any avoidance actions under chapter 5 of the Bankruptcy Code, which Replacement Liens shall be in addition to the security interests of the Lender in the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, in the same order of priority as such security interests existed on the Petition Date (collectively, all of the collateral described in this paragraph, the "Collateral"). The provisions of any intercreditor agreements (including, without limitation, with any sureties) shall remain in full force and effect and shall continue with respect to the liens and security interests granted to the Lender in the Collateral.

13.    The Replacement Liens herein granted: (i) are and shall be in addition to all security interests, liens and rights of set-off of the Lender existing on the Petition Date; and (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Final Order without any further action by the Debtor or the Lender and without the necessity of the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, filings with the United States Patent and Trademark Office, mortgages or other documents.

14.    In addition to the Replacement Liens granted to the Lender pursuant to this Final Order, the Lender is hereby granted a superpriority administrative claim under Section 507(b) of the Bankruptcy Code (the "507(b) Claim") in the full amount allowable under Section 507(b) and the Bankruptcy Code. *to the extent of the dimunition) psh in the value of the Collateral.*

15.    Any provision of this Order or the Prepetition Loan Agreements to the contrary notwithstanding, the liens and 507(b) Claims granted to the Lender pursuant to the Prepetition Loan Agreements and this Order shall be subject and subordinate to a carve out (the "Carve Out") for:

a.    amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a); and

b.    following the occurrence and during the pendency of an Event of Default (as such term is defined in the Prepetition Loan Agreements or this Final Order) and the liquidation of all Collateral in these chapter 11 cases or the conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, the payment of allowed professional fees and expenses incurred by the Debtor's attorneys retained pursuant to Section 327 of Bankruptcy Code (the "Legal Fees and Expenses") after application of prepetition retainers and in an aggregate amount not to exceed $25,000; provided however, that the Carve-Out shall not include professional fees and disbursements incurred in connection with prosecuting or asserting any claims or causes of action against the Lender and/or challenging or raising any defense to the Prepetition Indebtedness or the liens of the Lender.  Notwithstanding anything to the contrary herein, no Collateral, Cash Collateral, or any portion of the Carve-Out may be used to object to or contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Prepetition Indebtedness or the liens securing the Prepetition Indebtedness, or to prosecute or assert any claims or causes of action against the Lender.

16.     Unless the Lender has provided its prior written consent, there shall not be entered in this Chapter 11 Case any order which authorizes any of the following: (i) the obtaining of credit or the incurrence of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is equal or senior to the Replacement Liens granted to the Lender herein, unless such credit or issuance of indebtedness provides for payment in full of the Prepetition Obligations and any other obligations of the Debtor to the Lender at the closing of such transaction; or (ii) the enforcement of any claimed security, mortgage, collateral interest or other lien of any person other than the Lender on all or any portion of the Collateral.

17.     Unless and until the Prepetition Loan Obligations have been repaid in full, the protections afforded to the Lender under this Final Order shall survive the entry of any order confirming a plan of reorganization and the Lender's prepetition liens and Replacement Liens in and to the Collateral and the 507(b) Claim shall continue in these proceedings, and the Lender's prepetition liens and Replacement Liens and 507(b) Claim shall maintain its priority as provided by this Final Order until the Prepetition Loan Obligations have been repaid in full.

18.     The use of Cash Collateral by the Debtor shall give rise to an obligation of the Debtor to the Lender for repayment of an amount equal to the amount of the Cash Collateral used and shall be secured by the Replacement Liens.

19.     The Lender and the Debtor may make non-material modifications or amendments to the Budget or this Final Order, to take effect upon five (5) business days written notice signed by both parties without further order of this Court, and all actions taken pursuant to such modified Budget shall be and hereby are expressly authorized hereunder. The Lender may consent in writing to extend the Expiration Date without a further hearing or order of this Court.

If the Lender determines to do so, written notification of such extension shall be provided to all parties in-interest.

20.    In consenting to a Budget and by taking any other actions pursuant to this Final Order, or in exercising the rights and remedies as and when permitted pursuant to this Final Order or the Prepetition Loan Agreements, the Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operations or management of the Debtor.

21.    The Lender may, at its sole discretion, retain third party consultants selected by the Lender to review matters pertaining to the business and properties of the Debtor, each at the Debtor's reasonable expense (collectively, the "Lender's Consultants"). The Debtor will permit the Lender's Consultants to examine the respective corporate, financial and operating records, and, at the Debtor's expense, make copies thereof, inspect the assets, properties, operations and affairs of the Debtor, visit any or all of the offices of the Debtor to discuss such matters with its officers, independent auditors, accountants or consultants (and the Debtor hereby authorizes such independent auditors, accountants and consultant to discuss such matters with the Lender's Consultants), and the Debtor will cooperate with the Lender's Consultants in all respects. All of the foregoing activities shall be conducted during normal business hours, and in such a manner as to create the least disruption of Debtor's operations as is reasonably possible.

22.    The provisions of this Final Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court, or with the consent of the Lender. Any stay, modification, reversal or vacation of this Final Order shall not affect the validity of any obligation of the Debtor to the Lender incurred pursuant to this Final Order. Notwithstanding any such stay, modification, reversal or vacation, all use of the Cash Collateral prior to written notice to the Lender of the effective date of any such stay, modification, reversal or vacation,

shall be governed in all respects by the provisions hereof and the Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the Liens, Replacement Liens and Superpriority Clams granted herein.

23.    Notwithstanding anything to the contrary in this Final Order, the Debtor's authority to use Cash Collateral pursuant to this Final Order shall terminate immediately and automatically (the "Termination Date"), (a) upon twenty-four (24) hours of the delivery of written notice to the Debtor by the Lender of any default or Event of Default of any terms and provisions of this Final Order or the Prepetition Loan Agreements; provided, however, that the Lender shall forbear until the Termination Date on the prepetition Events of Default under the Prepetition Loan Agreements; and (b) without notice of any kind upon (i) the Expiration Date, (ii) the conversion of the Chapter 11 Case to Chapter 7 cases or appointment of a trustee or examiner with expanded powers without the consent of the Lender, (iii) the entry of an order granting any other claim superpriority status or a lien equal or superior to the liens granted to the Lender, (iv) the initiation by any person of any lawsuit or adversary proceeding seeking to challenge the validity or priority of (or to subordinate) any of the Lender's liens and security interests on any of the Collateral between now and the Expiration Date, (v) the use of Cash Collateral in excess of amounts permitted under this Final Order, or (vi) the Debtor's failure to fulfill its obligations under Sections 362(d)(3)(A) or (B) of the Bankruptcy Code on or before February 2, 2010. Upon the Termination Date, the automatic stay pursuant to Section 362(a) of the Bankruptcy Code shall be deemed lifted and modified, without further order of this Court, to permit the Lender to exercise any and all of its rights and remedies under the Prepetition Loan Agreements and this Final Order; provided, however, that the obligations and rights of the Lender and Debtor with respect to all transactions which have occurred prior to the Termination Date, including, without limitation, the Lender's security in the Collateral and Debtor's right

after notice and a hearing to (i) use Cash Collateral, (ii) reinstate, or defend against the lifting of,

the automatic stay, or (iii) contest the existence of a default or Event of Default, shall remain

unimpaired and unaffected by any such termination and shall survive such termination; and

provided further that upon such termination the Lender and the Debtor shall be deemed to have

retained all of its rights and remedies, including, without limitation, those provided pursuant to

the Prepetition Loan Agreements, this Final Order and the Bankruptcy Code, and Debtor's right

after notice and a hearing to (i) request the use of Cash Collateral, (ii) seek to reinstate, or defend

against the lifting of, the automatic stay, or (iii) contest the existence of a default or Event of

Default.

      24.    In consideration for the continued use of Cash Collateral, the Debtor on

behalf of themselves and its successors and assigns (the "Releasors"), but without prejudice to

the rights of any statutory committee appointed in these chapter 11 cases or to the rights of other

parties in interest, including any Chapter 7 trustee appointed in these cases to assert claim on

behalf of the Debtor's estate (subject to paragraph 25 below), shall forever release, discharge and

acquit the Lender and its officers, directors, employees, agents, attorneys and predecessors in

interest (the "Releasees") of and from any and all claims, demands, damages, liabilities,

responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of

every type, including, without limitation, any so-called "lender liability" claims or defenses,

which arose on or prior to the date this Final Order is entered with respect to the Debtor, the

Prepetition Indebtedness, the Collateral, or the Prepetition Loan Agreements, unless applicable

law requires otherwise.

      25.    The findings contained in recital paragraphs of this Final Order shall be

binding upon all parties in interest, including, without limitation, the Debtor and any statutory

committee appointed in these chapter 11 cases, unless a party in interest (including any statutory

committee appointed in these chapter 11 cases) has timely filed an adversary proceeding (subject to the limitations in paragraph 15 above) challenging the amount, validity, enforceability, perfection or priority of the Prepetition Indebtedness or the Lender's liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Lender relating to the Prepetition Indebtedness on behalf of the Debtor's estate, no later than the date that is sixty (60) days after the entry of this Final Order, and the Court enters a final, non-appealable judgment in favor of the plaintiff in any such timely filed adversary proceeding. If no such adversary proceeding or contested matter is properly commenced as of such date, the Prepetition Indebtedness shall constitute a allowed fully secured claim, not subject to subordination or otherwise unavoidable, unless determined otherwise by applicable law. Subject only to the rights set forth in this paragraph, for all purposes in these chapter 11 cases, and any subsequent chapter 7 cases, the Lender's liens on the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Lender, the Prepetition Indebtedness and the Lender's liens on the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor thereto, unless applicable law dictates otherwise. If any such adversary proceeding is properly commenced as of such date, the findings contained in the recital paragraphs of this Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were express challenged in such adversary proceeding.

**SO ORDERED, ADJUDGED, DECREED, AND STIPULATED THIS** DEC 1 7 2009

**DAY OF DECEMBER, 2009.**

_____
UNITED STATES BANKRUPTCY JUDGE

**AGREED TO AND CONSENTED TO THIS** *12* **DAY OF DECEMBER, 2009**

*Berkley Manor Apartments L.P.*

~~VENTANA HILLS ASSOCIATES, LTD. AND~~
~~VENTANA HILLS PHASE II, L.P.~~

By: _____
      One of its attorneys

Richard H. Fimoff
Robbins, Salomon & Patt, Ltd.
25 East Washington Street, Suite 1000
Chicago, Illinois 60602
(312) 456-0185

ANGLO IRISH BANK CORPORATION LIMITED
(f/k/a Anglo Irish Bank Corporation PLC)

By: _____
      One of its attorneys

Eric S. Prezant
Leslie Allen Bayles
Aaron Davis
Bryan Cave LLP
161 North Clark Street Suite 4300
Chicago, Illinois 60601
(312) 602-5000

Date: 12/7/2009 8:58 AM

DRAFT

**Barkley Manor Apartments**
**Cash Flow Budget**

**13-WEEK CASH FLOW BUDGET**

| Account | Description | ACTUAL 21-Nov | ACTUAL 28-Nov | ACTUAL PR 5-Dec | FORECAST 12-Dec | FORECAST PR 19-Dec | FORECAST 26-Dec | FORECAST 2-Jan | FORECAST 9-Jan | FORECAST PR 16-Jan | FORECAST 23-Jan | FORECAST PR 30-Jan | FORECAST 6-Feb | FORECAST 13-Feb | FORECAST 20-Feb | FORECAST PR 27-Feb | FORECAST 6-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Week ending:** | | | | | | | | | | | | | | | | |
| | Receipts | 98,882 | 13,461 | 180,214 | 20,000 | 6,000 | 3,000 | 50,000 | 190,000 | 9,000 | 8,294 | | 200,000 | 40,000 | 15,269 | | 200,000 |
| | **Total Receipts** | 98,882 | 13,461 | 180,214 | 20,000 | 8,000 | 3,000 | 50,000 | 190,000 | 9,000 | 8,294 | 0 | 200,000 | 40,000 | 15,269 | 0 | 200,000 |
| | **Payments** | | | | | | | | | | | | | | | | |
| | **OPERATING EXPENSES** | | | | | | | | | | | | | | | | |
| 44499-000 | **PAYROLL AND BENEFITS** | | | | | | | | | | | | | | | | |
| 44500-000 | Management Salaries | 1,840 | | 1,840 | | 1,932 | | 2,000 | | 2,000 | | 2,000 | | 2,000 | | 2,000 | |
| 44510-000 | Payroll Allocation(mgr) | (920) | | (920) | | (966) | | (1,000) | | (1,000) | | (1,000) | | (1,000) | | (1,000) | |
| 44520-000 | Assistant Manager | 2,386 | | | | 2,900 | | 1,120 | | 1,120 | | 1,120 | | 1,120 | | 1,120 | |
| 44540-000 | Office/Leasing Wages | | | 2,160 | | | | 1,440 | | 1,440 | | 1,440 | | 1,440 | | 1,440 | |
| 44555-000 | Regional Maintenance Wages | | | | | | | | | | | | | | | | |
| 44556-000 | Regional Maintenance Allocations | 228 | | 228 | | 228 | | 227 | | 227 | | 227 | | 228 | | 228 | |
| 44560-000 | Maintenance Supervisor Wages | 1,449 | | 1,360 | | 1,496 | | 1,541 | | 1,541 | | 1,541 | | 1,541 | | 1,541 | |
| 44570-000 | Maintenance/Grounds Wages | 1,929 | | 2,069 | | 2,112 | | 2,140 | | 2,140 | | 2,140 | | 2,140 | | 2,140 | |
| 44610-000 | Payroll Allocations(Painting) | | | | | 0 | | 0 | | 0 | | 0 | | 0 | | 0 | |
| 44613-000 | Leasing Commission | 1,759 | | 487 | | 372 | | 509 | | 509 | | 509 | | 700 | | 700 | |
| 44617-000 | Renewal Bonus | 494 | | 357 | | 248 | | 297 | | 297 | | 297 | | 446 | | 446 | |
| 44620-000 | Employee Rent Discounts | | | | | 91 | | 61 | | 61 | | 61 | | 91 | | 91 | |
| 44630-000 | Taxes and Benefits | 1,392 | | 1,005 | | 770 | | 833 | | 833 | | 833 | | 870 | | 870 | |
| 44640-000 | Health Insurance | 907 | | | 1,012 | | | | | 1,012 | | | | 1,012 | | | |
| 44640-000 | Health Insurance (employee) | (72) | | (72) | | (72) | | (72) | | (72) | | (72) | | (72) | | (72) | |
| 44650-000 | Workers Compensation | 1,222 | 611 | | | 611 | | | | 611 | | | | 611 | | | |
| 44498-000 | **TOTAL PAYROLL AND BENEFITS** | 12,614 | 611 | 8,513 | 1,012 | 9,722 | 0 | 9,096 | 0 | 10,719 | 0 | 9,096 | 0 | 11,126 | 0 | 9,575 | 0 |
| 54999-000 | **GENERAL AND ADMINISTRATIVE** | | | | | | | | | | | | | | | | |
| 55100-000 | Answering Service | 98 | | | | 65 | | 70 | | 70 | | | | 70 | | | |
| 55110-000 | Automobile Expense | | | | | 200 | | 100 | | 100 | | | | 100 | | | |
| 55120-000 | Bank Service Charges | | | 24 | | 450 | | 450 | | 450 | | | | 450 | | | |
| 55160-000 | Cable/Internet | 40 | | | | 40 | | 40 | | 40 | | | | 40 | | | |
| 55180-000 | Computer License Fees | | 105 | | | 105 | | 105 | | 105 | | | | 105 | | | |
| 55220-000 | Copier Lease | 304 | | | | 304 | | 304 | | 304 | | | | 304 | | | |
| 55240-000 | Copies, Printing and Forms | | | | | 250 | | 200 | | 200 | | | | 500 | | | |
| 55260-000 | Credit Report Processing | | | | | 200 | | 148 | | 148 | | | | 163 | | | |
| 55270-000 | Furniture Rental - Residents | | | 186 | | 800 | | 386 | | 388 | | | | 388 | | | |
| 55320-000 | Late Fees | 6 | | | | 0 | | 0 | | 0 | | | | 0 | | | |
| 55340-000 | Legal & Professional Fees | | | | | 300 | | 300 | | 300 | | | | 300 | | | |
| 55360-000 | Licenses and Permits | 26 | | | | 0 | | 0 | | 0 | | | | 0 | | | |
| 55380-000 | Meals | | | | | 100 | | 75 | | 75 | | | | 0 | | | |
| 55400-000 | Membership Dues | | | | | 0 | | 100 | | 100 | | | | 100 | | | |
| 55420-000 | Mileage Reimbursement | | | 592 | | 0 | | 100 | | 3,250 | | | | 0 | | | |
| 55460-000 | Monitoring Fees | | | 96 | | 175 | | 175 | | 175 | | | | 177 | | | |
| 55480-000 | Office Supplies | 50 | 176 | 49 | | 125 | | 118 | | 118 | | | | 177 | | | |
| 55520-000 | Payroll Processing | | 387 | | | 65 | | 65 | | 65 | | | | 65 | | | |
| 55540-000 | Postage and Delivery | | 40 | 40 | | 50 | | 50 | | 50 | | | | 50 | | | |
| 55560-000 | Professional Development | | | | | 0 | | 0 | | 0 | | | | 0 | | | |
| 55580-000 | Recruiting | | | | | 0 | | 0 | | 0 | | | | 0 | | | |
| 55600-000 | Telephone | 165 | 165 | 165 | | 205 | | 205 | | 205 | | | | 205 | | | |
| 55610-000 | Telephone - Mobile | 19 | 155 | | | 200 | | 200 | | 200 | | | | 202 | | | |
| 55620-000 | Travel | | | | | 0 | | 0 | | 0 | | | | 0 | | | |

*Exhibit A*

Date: 12/7/2009 8:58 AM

DRAFT

**Berkley Manor Apartments**
Cash Flow Budget

**13-WEEK CASH FLOW BUDGET**

| Week ending: | ACTUAL 21-Nov | ACTUAL 28-Nov | ACTUAL 5-Dec | FC 12-Dec | FC PR 19-Dec | FC 26-Dec | FC PR 2-Jan | FC 9-Jan | FC PR 16-Jan | FC 23-Jan | FC PR 30-Jan | FC 6-Feb | FC PR 13-Feb | FC 20-Feb | FC PR 27-Feb | FC 6-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 55640-000 Uniforms | | | | | | | | | | | | | | | | |
| 55690-000 Other | | | 200 | | 0 | | | | 0 | | | | 0 | | | 0 |
| 55698-000 TOTAL GENERAL AND ADMINISTRATIVE | 663 | 868 | 1,351 | 0 | 3,734 | 0 | 0 | 0 | 6,343 | 0 | 0 | 0 | 3,392 | 0 | 0 | 0 |
| **65999-000 ADVERTISING AND PROMOTION** | | | | | | | | | | | | | | | | |
| 66010-000 Advertising - Apartment Finder | | | | | 1,199 | | | | 1,199 | | | | 1,199 | | | |
| 66050-000 Advertising - Apartments.com | | | | | 460 | | | | 449 | | | | 449 | | | |
| 66070-000 Advertising - ForRent Magazine | | | | | 994 | | | | 572 | | | | 572 | | | |
| 66090-000 Advertising - Move.com | | | | | 0 | | | | 0 | | | | 0 | | | |
| 66150-000 Advertising - OnYield USA | | | | | 115 | | | | 0 | | | | 113 | | | |
| 66210-000 Advertising - Rent.com | | | 389 | | 800 | | | | 389 | | | | 389 | | | |
| 66230-000 Advertising - Rental Guide | | | | | 720 | | | | 720 | | | | 720 | | | |
| 66270-000 Brochures | | | | | 750 | | | | 0 | | | | 0 | | | |
| 66290-000 Holiday Supplies | | | | | 0 | | | | 0 | | | | 0 | | | |
| 66310-000 Promotional Items | | 14 | | | 400 | | | | 450 | | | | 450 | | | |
| 66330-000 Public Relations | | | | | 0 | | | | 0 | | | | 0 | | | |
| 66350-000 Referral Fees - Other | | | | | 0 | | | | 0 | | | | 0 | | | |
| 66370-000 Referral Fees - Realtor | | | | | 0 | | | | 0 | | | | 250 | | | |
| 66390-000 Referral Fees - Resident | | | 500 | | 500 | | | | 0 | | | | 250 | | | |
| 66410-000 Renewal Incentive | | | | | | | | | 150 | | | | 150 | | | |
| 66430-000 Resident Functions | | | | | | | | | 450 | | | | 450 | | | |
| 66630-000 Website Hosting | | | | 2,000 | 20 | | | | 70 | | | | 70 | | | |
| 66598-000 TOTAL ADVERTISING AND PROMOTION | 0 | 2,077 | 903 | 2,090 | 5,948 | 0 | 0 | 0 | 4,449 | 0 | 0 | 0 | 5,062 | 0 | 0 | 0 |
| **69999-000 UTILITIES** | | | | | | | | | | | | | | | | |
| 70010-000 Alarm Line Service | 781 | | | | 800 | | | | 800 | | | | 800 | | | |
| 70030-000 Cable | 2,961 | 2,659 | 768 | | 3,000 | | | | 2,925 | | | | 2,925 | | | |
| 70050-000 Electricity - Common | | | | | 2,476 | | | | 5,847 | | | | 4,661 | | | |
| 70070-000 Electricity - Vacant | 106 | 374 | 19 | | 1,468 | | | | 842 | | | | 932 | | | |
| 70090-000 Electricity - Other | 64 | | | | 0 | | | | 0 | | | | 0 | | | |
| 70110-000 Gas - Common | | | | | 1,245 | | | | 951 | | | | 951 | | | |
| 70130-000 Gas - Vacant | 246 | 321 | | | 1,914 | | | | 2,109 | | | | 2,060 | | | |
| 70150-000 Gas - Other | 53 | 152 | | | 0 | | | | 0 | | | | 0 | | | |
| 70190-000 Trash Equipment Rental | 313 | 313 | | | | 313 | | | | 313 | | | | | 313 | |
| 70210-000 Trash Removal | 1,334 | 530 | | | | 1,400 | | | | 1,400 | | | | | 1,400 | |
| 70250-000 Water / Sewer | | | | | | | | | | 22,000 | | | | | | |
| 70398-000 TOTAL UTILITIES | 5,796 | 4,413 | 787 | 0 | 16,903 | 1,713 | 0 | 0 | 13,474 | 23,713 | 0 | 0 | 12,269 | 0 | 1,713 | 0 |
| **79999-000 BUILDING MAINTENANCE** | | | | | | | | | | | | | | | | |
| 80020-000 Alarm Systems | | | | | 100 | | | | 0 | | | | 0 | | | |
| 80040-000 Appliance - Repairs | | | | | 0 | | | | 0 | | | | 0 | | | |
| 80050-000 Appliance - Supplies | | | | | 65 | | | | 0 | | | | 100 | | | |
| 80080-000 Cleaning | | | | | 100 | | | | 40 | | | | 40 | | | |
| 80100-000 Electric - Repairs | | | | | 0 | | | | 0 | | | | 0 | | | |
| 80110-000 Electric - Supplies | | | | | 160 | | | | 160 | | | | 150 | | | |
| 80190-000 Exterminating | | 14 | 72 | | 212 | | | | 212 | | | | 212 | | | |
| 80250-000 Hardware and Supplies | | | | | 300 | | | | 300 | | | | 300 | | | |
| 80270-000 HVAC - Repairs | | | | | 0 | | | | 0 | | | | 0 | | | |
| 80290-000 HVAC - Supplies | | | | | 25 | | | | 100 | | | | 100 | | | |
| 80300-000 Inspections | | | | | | | | | | | | | | | | |
| 80320-000 Janitorial Supplies | | 65 | (150) | | 350 | | | | 350 | | | | 350 | | | |
| 80340-000 Plumbing - Repairs | | | | | 0 | | | | 0 | | | | 0 | | | |
| 80350-000 Plumbing - Supplies | | 33 | | | 100 | | | | 50 | | | | 50 | | | |

Date: 12/7/2009  8:58 AM

DRAFT

Berkley Manor Apartments
Cash Flow Budget

**13-WEEK CASH FLOW BUDGET**

| Account | Description | ACTUAL 21-Nov | ACTUAL 28-Nov | ACTUAL 5-Dec | FORECAST 12-Dec | FORECAST PR 19-Dec | FORECAST 26-Dec | FORECAST 2-Jan | FORECAST 9-Jan | FORECAST PR 16-Jan | FORECAST 23-Jan | FORECAST 30-Jan | FORECAST 6-Feb | FORECAST PR 13-Feb | FORECAST 20-Feb | FORECAST PR 27-Feb | FORECAST PR 6-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 86280-000 | Pressure Washing - Contract | | 112 | | | 270 | | | | | | | | | | | |
| 86400-000 | Window Washing | | | | | | | | | | | | | | | | |
| 80498-000 | TOTAL BUILDING MAINTENANCE | 0 | 112 | (84) | 0 | 1,412 | 0 | 0 | 0 | 1,212 | 0 | 0 | 0 | 1,582 | 0 | 0 | 0 |
| | | | | | | | | | | | | | | | | | |
| 80499-000 | GROUNDS MAINTENANCE | | | | | | | | | | | | | | | | |
| 80540-000 | Equipment - Maintenance | | | | | 150 | | | | 150 | | | | 150 | | | |
| 80550-000 | Equipment - Operations | | | | | 0 | | | | 0 | | | | 0 | | | |
| 80560-000 | Gate Repair | | | | | 100 | | | | 100 | | | | 100 | | | |
| 80580-000 | Irrigation System | | | | | 250 | | | | 0 | | | | 0 | | | |
| 80600-000 | | | | | | 0 | | | | 0 | | | | 0 | | | |
| 80640-000 | Landscape - Contract | 493 | | 526 | | 526 | | | | 0 | | | | 0 | | | |
| 80650-000 | Landscape - Supplies | | | | | 0 | | | | 0 | | | | 0 | | | |
| 80660-000 | Pool - Supplies | | | | | 0 | | | | 0 | | | | 0 | | | |
| 80700-000 | | | | | | 0 | | | | 0 | | | | 0 | | | |
| 80740-000 | Snow Removal - Supplies | | | | | 1,000 | | | | 2,500 | | | | 2,500 | | | |
| 80798-000 | TOTAL GROUNDS MAINTENANCE | 493 | 0 | 526 | 0 | 2,026 | 0 | 0 | 0 | 2,608 | 0 | 0 | 0 | 2,600 | 0 | 0 | 0 |
| | | | | | | | | | | | | | | | | | |
| 80999-000 | RENEWAL EXPENSE | | | | | | | | | | | | | | | | |
| 81020-000 | Carpet Cleaning and Repair | | | | | 150 | | | | 150 | | | | 150 | | | |
| 81060-000 | Painting | | | | | 840 | | | | 1,000 | | | | 1,000 | | | |
| 81998-000 | TOTAL RENEWAL EXPENSE | 0 | 0 | 0 | 0 | 990 | 0 | 0 | 0 | 1,150 | 0 | 0 | 0 | 1,150 | 0 | 0 | 0 |
| | | | | | | | | | | | | | | | | | |
| 81999-000 | TURNOVER EXPENSE | | | | | | | | | | | | | | | | |
| 82020-000 | Carpet Cleaning | | | 290 | | 700 | | | | 825 | | | | 750 | | | |
| 82040-000 | Carpet Repair | | | 150 | | 100 | | | | 100 | | | | 100 | | | |
| 82060-000 | Cleaning - Contract | | | 825 | | 900 | | | | 825 | | | | 750 | | | |
| 82120-000 | Paint - Supplies | | | | | 500 | | | | 750 | | | | 750 | | | |
| 82140-000 | Paint - Contract | | | 4,875 | 2,500 | 2,500 | 1,500 | | 2,000 | 2,000 | 1,434 | | 2,000 | 2,000 | 940 | | 1,500 |
| 82198-000 | TOTAL TURNOVER EXPENSE | 0 | 0 | 6,150 | 2,500 | 4,700 | 1,500 | 0 | 2,000 | 4,500 | 1,434 | 0 | 2,000 | 4,350 | 940 | 0 | 1,500 |
| | | | | | | | | | | | | | | | | | |
| 86999-000 | OTHER OPERATING EXPENSES | | | | | | | | | | | | | | | | |
| 90025-000 | Accounting Fees | 234 | 117 | | | 117 | | | | 117 | | | | 117 | | | |
| 90050-000 | Management Fees | | | | | | | | 9,005 | | | | 20,000 | | | | 9,124 |
| 90200-000 | Insurance - Auto | | | 9,450 | | | | | | | | | 8,594 | | | | |
| 90250-000 | Insurance - Package | 6,186 | 3,093 | | | 3,093 | | | | 3,093 | | | | 3,093 | | | |
| 90300-000 | Real Estate Taxes | | | | | | | | | | | | | | | | |
| 90998-000 | TOTAL OTHER OPERATING EXPENSES | 6,420 | 3,210 | 9,450 | 0 | 3,210 | 0 | 0 | 9,005 | 3,210 | 0 | 0 | 28,934 | 3,210 | 0 | 0 | 9,124 |
| | | | | | | | | | | | | | | | | | |
| 99900-000 | TOTAL OTHER INCOME/EXPENSES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | | | | | |
| | NECESSARY CAPITAL EXPENDITURES | | | | | | | | | | | | | | | | |
| 14999-000 | FIXED ASSETS | | | | | | | | | | | | | | | | |
| 15020-000 | Landscape Improvements | | | | | 100 | | | | 100 | | | | 100 | | | |
| 15050-000 | Equipment | | | 43 | | 230 | | | | 250 | | | | 250 | | | |
| 15090-000 | Golf Carts | | | | | 100 | | | | 100 | | | | 100 | | | |
| 15110-000 | Tools | | | 11 | | 75 | | | | 75 | | | | 75 | | | |
| 15120-000 | Transportation Vehicle | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15198-000 | TOTAL MISCELLANEOUS FIXED ASSET | 0 | 0 | 54 | 0 | 525 | 0 | 0 | 0 | 525 | 0 | 0 | 0 | 525 | 0 | 0 | 0 |
| | | | | | | | | | | | | | | | | | |
| 15149-000 | BUILDING IMPROVEMENTS | | | | | | | | | | | | | | | | |
| 15150-000 | Back Flows | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15160-000 | Balconies | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15190-000 | Electric | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15200-000 | Fire Extinguishers | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15240-000 | Gutter & Downspouts | | | | | 0 | | | | 0 | | | | 0 | | | |

Date: 12/7/2009  8:58 AM

DRAFT

**Berkeley Manor Apartments**
**Cash Flow Budget**

| | | ACTUAL 21-Nov | ACTUAL 28-Nov | ACTUAL 5-Dec | FORECAST 12-Dec | FORECAST PR 19-Dec | FORECAST 26-Dec | FORECAST PR 2-Jan | FORECAST 9-Jan | FORECAST PR 16-Jan | FORECAST 23-Jan | FORECAST PR 30-Jan | FORECAST 6-Feb | FORECAST PR 13-Feb | FORECAST 20-Feb | FORECAST PR 27-Feb | FORECAST 6-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week ending: | | | | | | | | | | | | | | | | | |
| 15270-000 | Lighting | | | | | | | | | | | | | | | | |
| 15300-000 | Patio Doors | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15320-000 | Plumbing | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15330-000 | Roofs | | | | | 500 | | | | 500 | | | | 0 | | | |
| 15340-000 | Screens | | | | | 0 | | | | 0 | | | | 500 | | | |
| 15378-000 | TOTAL BUILDING IMPROVEMENTS | 0 | 0 | 0 | 0 | 500 | 0 | 0 | 0 | 500 | 0 | 0 | 0 | 500 | 0 | 0 | 0 |
| 15379-000 | EXTERIOR IMPROVEMENTS | | | | | | | | | | | | | | | | |
| 15410-000 | Garage Doors | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15430-000 | Garages | | | | | 0 | | | | 100 | | | | 100 | | | |
| 15930-000 | Gates | | | | | 0 | | | | 100 | | | | 100 | | | |
| 15440-000 | Irrigation | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15460-000 | Painting | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15470-000 | Parking Lots | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15480-000 | Playground | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15490-000 | Seal Coating | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15500-000 | Sidewalks | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15510-000 | Signage | | | | | 0 | | | | 0 | | | | 200 | | | |
| 15520-000 | Trash Areas | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15540-000 | Walls | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15558-000 | TOTAL EXTERIOR IMPROVEMENTS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 200 | 0 | 0 | 0 | 400 | 0 | 0 | 0 |
| 15559-000 | UNIT IMPROVEMENTS | | | | | | | | | | | | | | | | |
| 15570-000 | Blinds | | | 104 | | 0 | | | | 350 | | | | 350 | | | |
| 15580-000 | Cabinets | | | | | 0 | | | | 350 | | | | 350 | | | |
| 15590-000 | Carpet | | | | 1,625 | 1,625 | | | 1,350 | 1,350 | | | 1,350 | 1,350 | | | 750 |
| 15610-000 | Electric | | | | | 75 | | | | 100 | | | | 0 | | | |
| 15513-000 | Hardware / Doors | | | (160) | | 1,000 | | | | 350 | | | | 350 | | | |
| 15540-000 | Hot Water Heaters | | | 826 | | 0 | | | | 200 | | | | 200 | | | |
| 15550-000 | HVAC | | | | | 0 | | | | 350 | | | | 350 | | | |
| 15660-000 | Lighting | | | | | 0 | | | | 100 | | | | 100 | | | |
| 15670-000 | Plumbing | | | 53 | | 200 | | | | 350 | | | | 350 | | | |
| 15680-000 | Tile | | | | | 900 | | | | 900 | | | | 900 | | | |
| 15690-000 | Vinyl | | | | | 300 | | | | 900 | | | | 900 | | | |
| 15710-000 | Walls | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15728-000 | TOTAL UNIT IMPROVEMENTS | 0 | 0 | 822 | 1,625 | 4,100 | 0 | 0 | 1,350 | 5,300 | 0 | 0 | 1,350 | 5,200 | 0 | 0 | 750 |
| 15729-000 | APPLIANCES | | | | | | | | | | | | | | | | |
| 15740-000 | Dishwasher | | | | | 0 | | | | 249 | | | | 0 | | | |
| 15750-000 | Dryer | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15760-000 | Exhaust Fan | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15770-000 | Garbage Disposal | | | 97 | | 92 | | | | 100 | | | | 100 | | | |
| 15780-000 | Microwave | | | | | 1,000 | | | | 1,236 | | | | 1,236 | | | |
| 15790-000 | Appliance Parts | | | 116 | | 0 | | | | 400 | | | | 400 | | | |
| 15800-000 | Range | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15820-000 | Refridgerator | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15830-000 | Washer | | | | | 0 | | | | 0 | | | | 0 | | | |
| 15848-000 | TOTAL APPLIANCES | 0 | 0 | 213 | 0 | 1,092 | 0 | 0 | 0 | 2,045 | 0 | 0 | 0 | 1,896 | 0 | 0 | 0 |
| 15849-000 | COMMON AREA | | | | | | | | | | | | | | | | |
| 15860-000 | Business Center | | | | | | | | | | | | | | | | |
| 15870-000 | Clubhouse | | | | | | | | | | | | | | | | |
| 15880-000 | Fitness Center | | | | | | | | | | | | | | | | |

Date: 12/7/2009  8:53 AM

DRAFT

Berkley Manor Apartments
Cash Flow Budget

13-WEEK CASH FLOW BUDGET

| | | ACTUAL | ACTUAL | ACTUAL | FORECAST | FORECAST | FORECAST | FORECAST | FORECAST | FORECAST | FORECAST | FORECAST | FORECAST | FORECAST | FORECAST | FORECAST | FORECAST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week ending: | | 21-Nov | 28-Nov | 5-Dec | 12-Dec | PR 19-Dec | 26-Dec | 2-Jan | 9-Jan | PR 16-Jan | 23-Jan | 30-Jan | 6-Feb | PR 13-Feb | 20-Feb | PR 27-Feb | 6-Mar |
| 15890-000 | Pool | | | | | | | | | | | | | | | | |
| 15900-000 | Pool Equipment | | | | | | | | | | | | | | | | |
| 15920-000 | COMMON AREA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 15929-000 | MARKETING DEVELOPMENT | | | | | | | | | | | | | | | | |
| 15940-000 | Ads | | | | | | | | | | | | | | | | |
| 15950-000 | Brochures | | | | | | | | | | | | | | | | |
| 15970-000 | Stationery | | | | | | | | | | | | | | | | |
| 15978-000 | MARKETING DEVELOPMENT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | SECURITY DEPOSITS FUNDED | 22,068 | | 0 | | | | | | | | | | | | | |
| LOAN PAYABLES | | | | | | | | | | | | | | | | | |
| 26300-000 | Loan Payable - Chrysler | 661 | | | | 661 | | | | 661 | | | | 661 | | | |
| | Bank rec Adjustment - Other | | | 949 | | | | | | | | | | | | | |
| | ADJUSTMENTS TO OPENING CASH BALANCE | | 6,310 | 52 | | | | | | | | | | | | | |
| | NON-CASH PAYROLL ALLOCATION ADJ | | 2,292 | 692 | | | | | | | | | | | | | |
| | Total Payments | 26,647 | 41,981 | 30,379 | 7,137 | 49,523 | 3,213 | 9,096 | 12,355 | 56,888 | 25,147 | 9,096 | 32,284 | 53,923 | 940 | 11,288 | 11,374 |
| | Cashflow Surplus/Deficit (-) | 72,235 | (28,530) | 149,835 | 12,863 | (41,523) | (213) | 46,904 | 277,645 | (47,888) | (16,853) | (9,096) | 167,716 | (13,923) | 14,329 | (11,288) | 188,526 |
| | Opening Cash Balance | 8,535 | 80,770 | 52,250 | 202,085 | 50,396 | 8,873 | 8,660 | 49,564 | 227,209 | 81,505 | 33,617 | 16,764 | 7,668 | 175,384 | 22,402 | 11,114 |
| | Closing Cash Balance | 80,770 | 52,250 | 202,085 | 214,948 | 8,873 | 8,660 | 49,564 | 227,209 | 81,505 | 33,617 | 16,764 | 7,668 | 8,073 | 22,402 | 11,114 | 199,739 |
| | ADEQUATE PROTECTION PAYMENTS | | | | (164,552) | | | | (145,703) | | | | (153,388) | | | | (145,000) |
| | Closing Cash Incl. Adequate Protection Pmts | 80,770 | 52,250 | 202,085 | 50,396 | 8,873 | 8,660 | 49,564 | 81,505 | 33,617 | 16,764 | 7,668 | 21,996 | 8,073 | 22,402 | 11,114 | 54,739 |